## Wilson and others *v.* Spaulding, Collector.

*(Circuit Court, N. D. Illinois.* January 22, 1884

Customs Duties—Taffeta Gloves.
Taffeta gloves containing over 50 per cent. in value of silk and over 25 per cent. of cotton are subject to a duty of 50 per cent. *ad valorem* under the ninth paragraph of schedule 4.

At Law.
*Storck & Schumann,* for plaintiffs.
*Gen. Joseph B. Leake,* Dist. Atty., for defendant.

BLODGETT, J.    This is a suit to recover back duties paid by plaintiffs under protest, on three lots of "Taffeta" gloves, imported by the plaintiffs in March and September, 1882, the amount of duties which plaintiffs claim was paid in excess of what was rightly chargeable, being $129.30 in this particular case.   The goods in question were classed by the inspectors as composed of silk and cotton, "silk, chief component of value," and charged with an *ad valorem* duty of 60 per cent., under the seventh paragraph of schedule H, section 2504. The plaintiffs, by the protest, claim that these goods contain 25 per cent. or over in value of cotton, and are only dutiable at 50 per cent. *ad valorem*, under the last clause of schedule H, and the proviso of section 1 of the act of February 8, 1875, "amendatory of the customs and revenue law."   By that act it is provided "that from and after the date of the passage of this act, in lieu of the duties heretofore imposed on the importations of the goods, wares, and merchandise hereinafter specified, the following rates of duties shall be exacted, namely:    *    *    *    On all goods, wares, and merchandise not otherwise herein provided for, made of silk, or of which silk is the component material of chief value, irrespective of the classification thereof for duty by or under previous laws, or of their commercial designation, sixty per centum *ad valorem:* provided that this act shall not apply to goods, wares, or merchandise which have, as a component material thereof, twenty-five per centum, or over, in value, of cotton, flax, wool, or worsted."

The proof in this case shows without dispute that the gloves in this case are composed of silk and cotton, and contain over 25 per cent. of their value in cotton, but silk is the chief component of value; that is, they contain over 50 per cent. in value of silk.   The duty upon them is therefore not specifically fixed by the act of February 8, 1875, as the proviso in this act takes them out of the 60 per cent. class, and the only question is, under what law are they dutiable?   Plaintiffs claim them to be dutiable under the ninth paragraph of schedule H, while they were charged with duty under the seventh paragraph of schedule H.   The paragraphs in schedule H, upon which the questions arise, read as follows:

"(7) Silk vestings, pongees, shawls, scarfs, mantillas, pelerines, handkerchiefs, veils, laces, shirts, drawers, bonnets, hats, caps, turbans, chemisettes, hose, mitts, aprons, stockings, *gloves,* suspenders, watch chains, webbing, braid, fringes, galloons, tassels, cords, and trimmings, and ready-made clothing, of silk, or of which silk is the component material of chief value, sixty per cent. *ad valorem.*"

"(9) Manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for, fifty per centum *ad valorem.*"

Since the passage of the act of February 8, 1875, several opinions construing it have been given by the attorney general and secretary of the treasury.   These opinions are reported in 15 Op. Atty. Gen. 51, and Decisions of Treasury Department for 1875, page 344, and

Decisions of the Treasury Department for 1876, page 133; and I infer that under the construction of the law given by these rulings the practice of the customs officers has been to charge a duty of 60 per cent. *ad valorem* on this class of goods, on the ground that they are specifically dutiable as "silk gloves, under the seventh paragraph of schedule H. It seems to me, however, that there is at least room for a doubt whether any articles except ready-made clothing, composed partly of silk and partly of cotton, and where silk is the chief component of value, come within the meaning of the seventh paragraph. It reads, "silk vestings, etc." until we reach the words, "and ready-made clothing of silk," and then proceeds, "or of which silk is a component material of chief value." And I think the fair grammatical construction of the sentence limits the application of the words, "or of which silk is a component material of chief value," to "ready-made clothing," and that it was intended that the articles previously mentioned in the paragraph, such as "silk vestings," "gloves," etc., should be wholly of silk in order to subject them to the 60 per cent. *ad valorem* duty.

But whether I am right or not as to the true reading of this seventh paragraph, I think we must certainly assume that congress, by this proviso to the first section of the act of 1875, intended that goods composed of silk and cotton, but which contained 25 per cent. or over of cotton, shall not be dutiable at 60 per cent., else the exception by the proviso means nothing. Why exclude them from the clause of the act immediately preceding this proviso, which makes certain classes of goods dutiable at 60 per cent., and yet by construction put them back into this seventh paragraph, in schedule H, which charges them with 60 per cent. *ad valorem* duty. It is the duty of the court to give effect to all the parts of the law, if it can be consistently done; and, inasmuch as congress did not say by this proviso that these goods containing 25 per cent. or over of cotton should come in free of duty, we must assume that they were still subject to some duty; and the natural clause under which they fall, as they are to pay less than 60 per cent. *ad valorem*, is the last clause of schedule H, which makes them dutiable as "manufactures of silk, or of which silk is the component material of chief value, not otherwise provided for, 50 per cent. *ad valorem*." They certainly respond to this definition, and I therefore conclude that they are dutiable under this ninth clause of schedule H.

This view seems to me to harmonize the legislation, and give effect to all the parts of the act of February 8, 1875, making it consistent with itself and the previous legislation of congress on the subject.

The issue in this case, and the cases that were tried with it, will be found for the plaintiff.